**Clark B. GATHERCOLE,**
**Plaintiff-Appellee-Cross-Appellant,**

v.

**GLOBAL ASSOCIATES,**
**Defendant-Appellant-Cross-Appellee.**

**Nos. 83–1885, 83–1894 and 83–1920.**

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Dec. 15, 1983.

Decided March 14, 1984.

---

Kim Malcheski, Donaldson, Malcheski & Parker, San Francisco, Cal., Karen MacRae Smith, Atty., E.E.O.C., Washington, D.C., for plaintiff-appellee-cross-appellant.

Michael H. Salinsky, William G. Alberti, Alson R. Kemp, Jr., Virginia S. George, Pillsbury, Madison & Sutro, San Francisco, Cal., for defendant-appellant-cross-appellee.

Before MERRILL, Senior Circuit Judge, BOOCHEVER, Circuit Judge, and WYZANSKI,* Senior District Judge.

WYZANSKI, Senior District Judge:

Appellant Global Associates (Global) appeals from the district court's March 31, 1983 judgment that it is liable to appellee Clark B. Gathercole for its violation of his rights under § 4(a) of the Age Discrimination in Employment Act (ADEA), 29 U.S.C. § 623(a), in that Global discharged him because of his age from his employment as an airline pilot on the airline-type passenger flights used by the U.S. Army's Ballistic Missile Defense System Command for Military Operations.

It is undisputed that: (1) Global employed Gathercole as an airline pilot stationed on Kwajalein Island, the principal location of the Kwajalein Missile Range. (2) Gathercole's sole duty was to pilot passenger aircraft on the airline-type passenger flights used by the U.S. Army's Ballistic Missile Defense System Command for Military Operations. From the time that Global first employed Gathercole for a temporary period, from June 12, 1979 to August 5, 1979, (see Exhibit A attached to Answer to Complaint), it has been clear that Gathercole's "Services are to be performed as assigned by Employer [Global] in the Marshall Islands in connection with Employer's performance under Government Contract NO. DASG60–75–C–0001 or such other concurrent or successor contracts as may be executed between Employer and the Government, or at such other place or in such other connection as may be designated by Employer." And (3) on August 5, 1979 Gathercole had his 60th birthday. Only because on that day Gathercole reached 60 Global removed him from active flight status, and on August 8, 1979 discharged him.

Gathercole complains that Global's discharge action violated his right under § 4(a) of the ADEA, 29 U.S.C. § 623(a) which provides that:

(a) It shall be unlawful for an employer—

(1) . . . to discharge any individual . . . because of such individual's age.

In reply to that complaint Global invokes the following exculpatory provision set forth in § 4(f) of the ADEA, 29 U.S.C. § 623(f):

(f) It shall not be unlawful for an employer . . .—

(1) to take any action otherwise prohibited under subsection [ ] (a) . . . of this section where age is a bona fide occupational qualification reasonably neces-

---

* Honorable Charles Edward Wyzanski, Jr., Senior District Judge, District of Massachusetts, sitting by designation.

sary to the normal operation of the particular business...

Global contends that:

(1) within the meaning of § 4(f), "the particular business" in which Global employed the plaintiff was that of pilot on the airline-type passenger flights used by the U.S. Army's Ballistic Missile Defense System Command for Military Operations;

(2) such employment of the plaintiff was exclusively incident to a contract between Global and the United States Department of the Army specifying that Global shall provide air transportation for the Kwajalein Missile Range.

(3) The contract between Global and the U.S. Army's Ballistic Missile Defense System Command for Military Operations [Defendant's Exhibit 7] provided, at p. 4, that Global, as contractor, shall "do all things necessary for the accomplishment of satisfactory and timely performance of the requirements outlined in [a specific] Scope of Work" document. That document, in turn, explicitly adopted 350 FAA airline safety regulations. One of those adopted regulations of the FAA [see 29 C.F.R. § 860.102 (1981)] established a 60-year age limitation for pilots.

We do not know from the record whether as a fact the FAA held any hearing in connection with the adoption of this 60-year age regulation (though there is, of course, a presumption that the FAA complied with its official obligation to have done so). Nor does the record show whether the regulation was adopted on the basis of evidence, or whether the FAA had before it (in its agency files or elsewhere) supporting evidence. All we have in the district court record is the uncontradicted recital of an army officer in a letter to Global to the effect that the 60-year age regulation was imposed "for reasons of safety in air transportation at the Kwajalein Missile Range." [See Defendant's Exhibit 9, Plaintiff's Exhibit 8] [See 560 F.Supp. 644–645]

Before Global discharged Gathercole, he on July 5, 1979 had informed Global of his contention that the Age 60 Rule in the Army's regulation did not satisfy the requirements of the exculpatory provision set forth in § 4(f) of the ADEA, quoted *supra*. Global rejected that contention.

Then Gathercole requested Global to procure from the Army a waiver of the Age 60 Rule in his case. Accordingly, Global applied for a waiver by the Army; but the Army declined to grant it.

As heretofore stated, on August 5, 1979, Gathercole's 60th birthday, Global removed Gathercole from active flight status and on August 8, 1979 it formally discharged him.

Gathercole's complaint (resting solely on defendant Global's alleged unlawfulness in discharging him as a pilot, and not claiming that Gathercole was entitled to any other position) was heard in the Northern District of California by Judge Weigel and a jury. The jury returned a verdict in favor of plaintiff Gathercole. On March 31, 1983, for reasons set forth in an opinion, *Gathercole v. Global Associates,* 560 F.Supp. 642 (N.D.Cal.1983), the court denied defendant's motion for judgment notwithstanding the verdict, or for a new trial, and entered judgment for plaintiff in accordance with the verdict.

The only one of the several issues raised before us which we need to consider is whether *as a matter of law* Global's action discharging Gathercole meets the standard for exculpation established by § 4(f) of the ADEA, 29 U.S.C. § 623(f).

The district court ruled that Global was not immunized by the contract and the FAA regulation indirectly incorporated therein because there was no evidence that [in words which Judge Weigel quoted at 560 F.Supp. 645 from an opinion which in its *holding* was flatly *contra* to Judge Weigel's own opinion, *Tuohy v. Ford Motor Co.,* 490 F.Supp. 258, 264 (E.D.Mich. 1980) *rev'd on other grounds,* 675 F.2d 842 (6th Cir.1982)] " 'an appropriate federal agency has determined *after a full hearing* that, as to persons over the age of 60, it is not possible to use factors other than age to predict the likelihood of the onset of a sudden condition that could imperil the passengers' (emphasis added)."

There is a certain plausibility in the district court's view that "Absent evidence of the Army's basis for its decision, the fact that the Army seeks to require defendants to engage in discriminatory employment practices in violation of the ADEA does not insulate defendants from liability under that Act." 560 F.Supp. at 645 (footnote omitted). But we are of the opinion that the district court's view will not withstand close analysis.

Section 4(f) of the ADEA, 29 U.S.C. § 623(f) provides that a liability which would otherwise exist on account of action taken by an employer due to the age of the complaining employee does not exist if that age factor is "a bona fide occupational qualification [BFOQ] reasonably necessary to the normal operation of the particular business".

Here the so-called BFOQ was not determined by the Army's reliance on its own wisdom as to the reliability of pilots over 60 years of age but on the Army's reliance on the judgment of the FAA as expressed in FAA formal regulations applicable to 60-year-old airplane pilots of various types. It would be anomalous for the Army to question the FAA as to whether the evidence before that agency had been sufficient to enable it to reach a sound conclusion. Surely it could presume that the FAA both procedurally and substantively performed its duty.

It is sufficient that the Army, knowing of the expertise of the FAA, and of its obligation as a public agency to perform its official duty, accepted at face value its proclaimed standard of necessary minimum qualification. The Army is not a court of review for the FAA. Nor is it incumbent upon the Army to probe the methods of the FAA. The Army may reasonably assume that the government's expert agency with respect to flight safety acted appropriately both procedurally and substantively.

Global is in an even better defensive position than the Army. That private company received its contract on the express proviso that it would follow official regulations. For it to have failed to do so would have in all probability caused Global to be justly charged with breach of contract.

Moreover, certainly Global was in no position to challenge the applicability and soundness of or evidentiary support for the FAA regulations.

In short, the judgment against Global was erroneous because the district court failed to afford Global the protection conferred by § 4(f) of the ADEA, 29 U.S.C. § 623(f).

Our conclusion is fortified by our awareness that the district court's ruling would subject Global to a patently unjust dilemma—either to break its contractual promise to the government (and thus imperil its own likelihood of retaining the benefit of its present contract and its hope of comparable future contracts) or to fail in its obligation to obey a statutory command of the government.[1]

To cap the matter, we note that at least since 33 FR 9172, June 21, 1968, 29 C.F.R. § 860.102 (1981), the Wage and Hour Division of the United States Department of Labor, in its official regulations interpreting § 4(f)(1) of the ADEA has contained the following interpretive statement:

(c) The following are illustrations of possible bona fide occupational qualifications.

(d) Federal statutory and regulatory requirements which provide compulsory age limitations for hiring or compulsory retirement, without reference to the individual's actual physical condition at the terminal age, when such conditions are clearly imposed for the safety and convenience of the public. This exception would apply, for example, to airline pilots within the jurisdiction of the Federal

---

1. Global's position is in contrast to that of the employer in *Fernandez v. Wynn Oil Co.,* 653 F.2d 1273 (9th Cir.1981) which attempted to justify failure to promote a woman because of the preference of customers in a foreign country try to deal with male business representatives. Unlike Wynn Oil Co., Global was subject to statutory and regulatory requirements enacted to promote safety.

Aviation Agency. Federal Aviation Agency regulations do not permit airline pilots to engage in carrier operations, as pilots, after they reach age 60.

It is not disputed that the department of the Army has plenary power to regulate aviation at the Kwajalein Missile Range and that the Global contract with the Army in its "Scope of Work" provisions required Global to discharge a pilot who reached 60. Thus the 60–year requirement was "regulatory" within the meaning of 29 C.F.R. 860.102 (1981), just quoted. Furthermore, the 60–year regulatory requirement was "clearly imposed by the FAA and by the Army for the safety and convenience of the public". *Starr v. Federal Aviation Administration,* 589 F.2d 307, 309 (7th Cir. 1978) and cases there cited.

*Reversed.*